Carl Steven KETRON v. Doris Ann KETRON (AGUIRRE)

CA 85-37                                    692 S.W.2d 261

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1985

*Matthews, Campbell & Stephens*, by: *David R. Matthews*, for appellant.

*James G. Lingle*, for appellee.

TOM GLAZE, Judge. The parties to this suit were divorced on June 25, 1979, at which time appellee was awarded custody of their eight-year-old son, Chad. Nearly four years later, appellant filed this action, seeking custody of Chad. The trial court denied appellant's request, but increased his summertime visitation. On appeal, appellant contends the trial court's decision is against the preponderance of the evidence.

Appellant argues appellee has not provided a proper home atmosphere for Chad and has failed to set a good moral example for him. To support his argument, appellant relates the following events. Soon after the parties divorced, in June 1979, appellee began living with a man, Ray Aguirre. In October 1979, appellant petitioned to modify the parties' divorce decree, and during the same month, appellee married Aguirre. The parties temporarily resolved their differences, agreeing to a January 1980 order that modified appellant's visitation with Chad. No further litigation occurred until after the appellee and Ray Aguirre divorced in October of 1983. Appellee and Aguirre had one son, Toby, born of their marriage. Soon after this divorce, appellee began dating David Cravens, a married man who was separated from his wife. Appellee and Cravens began living

together, and it was this living arrangement that prompted appellant to file this custody proceeding in April of 1984. Appellant argues that appellee's immoral and improper conduct has provided an unstable, impermanent home life for Chad, and that Chad's best interests are no longer served by leaving him with appellee.

In reaching his decision, the chancellor cited the applicable case law and detailed his findings of fact in a memorandum opinion. The chancellor determined that appellee's living arrangement with Cravens was wrong and failed to set a good example for Chad. The judge further concluded:

> Having accepted that a spouse's immorality may so relate to the best interests of the child that it may form the basis for a change in custody, it must also be recognized that it is not appropriate to change custody to punish a divorced spouse for immoral conduct. From all of the testimony in this case I am not persuaded that a change in primary custody is in the best interests of this child. The child has been in the mother's primary custody since the divorce and their relationship is close. I am reluctant to radically alter the custody situation when the child is doing as well as this one appears to be physically, emotionally, and in his school work. The fact that a change in primary custody would separate this child from his younger brother is also of great importance.

The chancellor held it was not in the child's best interests to remove him from appellee's custody, but he did order appellee to terminate her living arrangement with Cravens and to have no man (to whom she is not married) spend the night while the children are present. We believe the chancellor's decision was consistent with case law, and his findings concerning the facts and circumstances in this case are not clearly against the evidence.

Clearly, the Supreme Court and this Court have never condoned a parent's promiscuous conduct or lifestyle when such conduct has been in the presence of the child. *See Digby* v. *Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978); *Walker* v. *Walker*, 262 Ark. 648, 559 S.W.2d 716 (1978); *Harmon* v. *Harmon*, 253 Ark. 428, 486 S.W.2d 522 (1972); *Northcutt* v. *Northcutt*, 249 Ark. 228, 458 S.W.2d 746 (1970); *Scherm* v. *Scherm*, 12 Ark.

App. 207, 671 S.W.2d 224 (1984); and *Bone* v. *Bone*, 12 Ark. App. 163, 671 S.W.2d 217 (1984). Even so, we pointed out in *Bone* that the primary consideration in awarding custody of children is the welfare and best interests of the children involved, and the chancellor's findings will not be reversed unless they are clearly contrary to the preponderance of the evidence. Our Supreme Court has also held the child's welfare is the controlling consideration and custody is not awarded as a reward to, or punishment of, either parent. *Johnson* v. *Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975).

Here the chancellor found that appellee, while unmarried, had lived with two different men, Aguirre and Cravens. Although she eventually married Aguirre, appellant testified that she had no plans to marry Cravens even if he later divorced his wife. Neither appellee nor Cravens believed their living arrangement was wrong nor did appellee believe that such arrangement adversely affected Chad. Nevertheless, she stated that she would terminate her living arrangement with Cravens if so directed by the trial court. The trial court further found that appellant had remarried, that he had conscientiously supported Chad, and that he could adequately care for his son. In sum, the court determined Chad had a good relationship with both his parents and was doing well physically, emotionally, and in his school work.

In view of the evidence concerning appellee's illicit relationships, appellant argues we should reverse the chancellor's refusal to change custody as was done—under similar circumstances—in the *Digby, Scherm* and *Bone* cases cited hereinabove. These cases are factually distinguishable from the instant case, and while we believe the decision on whether we should reverse is a close one, we are not convinced that the chancellor's decision is against Chad's best interests. For example, one compelling reason given by the trial court for continuing custody in appellee was its reluctance to separate Chad from his younger half-brother, Toby. On this point, the trial court's reasoning is consistent with settled case law reflecting that, unless exceptional circumstances are involved, young children should not be separated from each other by dividing their custody. *Johnston* v. *Johnston*, 225 Ark. 453, 283 S.W.2d 151 (1955) and *Vilas* v. *Vilas*, 184 Ark. 352, 42 S.W.2d 379 (1931).

█ Next, we note that the courts in *Digby, Scherm* and *Bone* relied on facts that indicated that the parent denied custody had failed to care properly for the children. Here, the trial court found no such facts, nor have we from our review of the record. In the instant case, Chad has lived all of his eight years with his mother, he has had liberal visitation with his father, he (by appellant's own terms) is a well-adjusted, young boy who is doing well in all respects, including school. As appellant testified, the primary reason he filed for custody of Chad was that appellee did not think Chad "ought to be living with his mother when she is living in sin." Given the distinguishing facts of this case, we are unable to say the chancellor was clearly erroneous in leaving custody of Chad with appellee.

█ We note appellant's doubts that the chancellor's order (prohibiting men from spending the night when the children are present) can be enforced. While the difficulty of enforcement of a court's order is a factor to consider when determining the custody issue, it is not conclusive. The chancellor has the right to retain control of this case, and he is in a superior position to ensure that Chad's welfare and best interests are protected. If appellee fails to heed the chancellor's admonitions, the chancellor may choose to take more drastic steps to ensure that Chad is raised in a proper custodial environment. *See Sweat* v. *Sweat*, 9 Ark. App. 326, 659 S.W.2d 516 (1983).

Affirmed.

CLONINGER, J., dissents.

LAWSON CLONINGER, Judge, dissenting. I respectfully dissent from the majority because I do not believe it is in the best interests of the child to remain in the appellee's custody.

The chancellor found that appellant has remarried and appears to have a very stable marriage; that appellant attends church regularly and takes Chad with him; that he has conscientiously supported Chad in the past; that he loves Chad and treats him well; and that he could adequately care for Chad. Although the chancellor also found that appellee loves and treats Chad well, he stated that he thought her living arrangements were "wrong", that they failed to set a good example for Chad and that society in general would find them to be "immoral". Based on these

findings, it seems apparent that appellee has not been providing a stable home environment or a sense of moral values for Chad and that appellant can do so immediately. Therefore, I think the court's decision is clearly contrary to the preponderance of the evidence.

Furthermore, I feel that the majority's decision is inconsistent with existing case law. Less than one year ago, this court decided *Scherm* v. *Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984). In that case, the evidence tended to show that the mother, who was the custodial parent, had had relationships with three men since her divorce, that the children had had contact with at least two of these men, and that she entertained overnight male visitors when her children were at home. The chancellor found that the evidence was not sufficient to warrant a change of custody, but this court reversed. We stated:

> [T]he chancellor recognized the precarious situation in which the children have been placed. Aside from any moral argument, appellee has had a relationship with three men since her divorce, and the children have experienced contact with at least two of them. Appellee's amenability to having men in the house on a regular, overnight basis provides the children with an impermanent, unstable situation. Appellee's actions during the two years preceding this action have been neither wholesome nor in the best interests of her children.

*Id.* at 210.

In the instant case, the chancellor recognized and the evidence showed that appellee is providing essentially the same type of unstable atmosphere for Chad which was the basis for our reversal in *Scherm*. The majority attempts to factually distinguish *Scherm* because there, allegations were also made that the mother failed to properly clothe and care for her children. Here, there were no such allegations made. I fail to see the validity of this distinction. We clearly based our reversal of the chancellor in *Scherm* on the ground that the mother's "romantic" lifestyle was not in the best interests of the children.

In any event, while I would agree that a child's physical well-being is vitally important, it is my opinion that the development of

his moral values is equally important. If this area of a child's upbringing is neglected, then he is not being "cared for properly." I think the evidence indicates that appellant's home environment would not only serve Chad's physical needs but is better suited to give him a sense of moral values.

Finally, I agree with appellant that the court's order is one which will be difficult, if not impossible, to enforce. The trial judge in *Scherm, supra*, ordered the mother not to permit any man romantically involved with her to stay overnight at her residence while the children were there. This court disapproved of the order, stating that "such an order places the court and the appellant in a position to continuously monitor appellee's conduct. . . ." *Id.* at 210. The same is true of the order in the instant case.

I would reverse the chancellor's decision and award custody to appellant.