Roy Charles RUSH, Shirley Ann Rush, and Arkansas
Department of Human Services *v.* Patricia Marie (Bishop)
WALLACE and Evin Wallace

CA 87-345                                    742 S.W.2d 952

Court of Appeals of Arkansas
En Banc
Opinion delivered January 13, 1988

*Harrison & Hewett*, by: *Mark Hewett*, for appellants Roy Charles Rush and Shirley Ann Rush.

*Debby Thetford Nye*, General Counsel, *Breck G. Hopkins*, Deputy General Counsel, for appellant Arkansas Department of Human Services.

*Parker Law Firm*, by: *Douglas W. Parker* and *Kyle D. Parker*, for appellees.

JAMES R. COOPER, Judge. In this custody case, the appellants Roy and Shirley Rush are the maternal grandparents of Jennifer Bishop and the parents of the appellee Patricia Marie (Bishop) Wallace, and the appellant Arkansas Department of Human Services (ADHS) is an intervenor. The appellee, Evin Wallace, is the husband of Patricia and is Jennifer Bishop's stepfather.

This is the second appeal involving custody of Jennifer. In 1984, while Jennifer was residing with the appellees, the Rushes

sought custody of Jennifer. After several hearings, the chancellor awarded permanent custody of the child to her natural father, Danny Bishop (who is not a party to the appeal of the case at bar). Shortly thereafter, however, Bishop delivered Jennifer to the Rushes. Patricia, in 1985, petitioned the court to change custody. The court granted the petition and established visitation rights for the Rushes. Mr. Bishop did not appeal, but the Rushes appealed to this Court, and we affirmed the chancellor's decision in an unpublished opinion on September 17, 1986.

On October 1, 1986, the Rushes petitioned the court to award custody of Jennifer to ADHS; to require that the attorney *ad litem* appointed for Jennifer continue to serve; and to hold the Wallaces in contempt. The trial court granted a motion by ADHS to intervene and, after a hearing in December 1986, left custody of Jennifer in the natural mother, Patricia Wallace; terminated the grandparents' visitation rights; denied the petition for contempt and change of custody; dismissed ADHS from the suit; assessed $750.00 attorney's fees and costs against the Rushes; and dismissed the attorney *ad litem* from the case. From that decision, comes this appeal.

On appeal, the appellants, Roy and Shirley Rush, argue four points for reversal, and the appellant, ADHS, argues three. We address the arguments separately, but we will combine the arguments of the appellants where they are similar. For their first argument, both the Rushes and the ADHS address the issue of pretrial discovery. ADHS argues that it was error for the trial court to refuse to compel discovery, and the Rushes argue that it was error for the trial court to deny their motions for a continuance, to compel discovery, and for sanctions and expenses. We find no error on these points because of the unique facts involved in this case.

In 1984 the Rushes accused their son-in-law of sexually molesting Jennifer. After numerous hearings, the court found the accusations to be unfounded and in October 1985 ordered that custody of the child be returned to Patricia Wallace. However, before the child could be returned to the mother, Mrs. Rush left Arkansas with Jennifer. After her return in January 1986 the court issued an order allowing the Rushes to take Jennifer to school every day and permitting them visitation rights to begin in

April 1986.

In March 1986 the Wallaces left the state, taking Jennifer with them. When the Rushes discovered that the Wallaces had left the state, they filed a petition on April 10, 1986, requesting that the Wallaces be held in contempt for leaving the jurisdiction of the court and for denying them their visitation rights. However, because the case was still on appeal to this Court, the chancellor held the prior order in abeyance with the exception of the requirement that the child remain within the jurisdiction of the court. That part of the order was rescinded after the chancellor found that the Rushes had been harassing the Wallaces. The chancellor refused to hold the Wallaces in contempt of court.

As noted earlier, after this Court's decision on September 17, 1986, affirming the chancellor's order, the Rushes again petitioned the trial court requesting that the Wallaces be held in contempt, and seeking a change in custody of Jennifer to ADHS.

Prior to trial, the parties reached an agreement through their attorneys under which the Wallaces were to appear at a deposition in Kansas City on November 11, 1986, to answer questions concerning the welfare of Jennifer. According to the Wallaces, the agreement provided that they would not disclose the location of Jennifer's residence. They also agreed that the only parties to be present at the deposition would be the attorney for the Rushes, the court reporter and the Wallaces. The appellees stated that their attorney would not be present because they could not afford for him to attend.

At the deposition, both Evin and Patricia Wallace answered almost every question put to them by the Rushes' attorney with the phrase, "next question." They absolutely refused to answer any questions put to them by the attorney for ADHS because they had not agreed for him to be present.

On December 1, 1986, a motion for a continuance was filed requesting that the hearing be postponed because discovery had not been completed. The Rushes also requested that the appellees be compelled to comply with discovery and they requested sanctions and expenses. The trial court refused their request for a hearing on the motions, stating that the motions would be heard on the day of the hearing on the petition, and the court further

refused to grant a continuance. At the close of the hearing on December 5, 1986, the trial court refused either to compel discovery, to impose sanctions on the appellees, or to charge them with the costs. The chancellor specifically found that the appellees had been truthful and honest in their testimony regarding the welfare of Jennifer and that there was no need for any further discovery. The chancellor also found that the Rushes had been harassing the appellees.

■■ The trial court has a wide latitude of discretion in matters pertaining to discovery, and the appellate court will not reverse the chancellor's exercise of discretion in the absence of an abuse of discretion that is prejudicial to the appealing party. *Marrow* v. *State Farm Insurance Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978). The goal of all discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Marrow, supra.* Furthermore, the trial court has a duty in lengthy and complex cases where the possibility of abuse is present to protect parties and witnesses from annoyance, excessive expense, and harassment. *Dolgow* v. *Anderson*, 53 F.D.R. 661 (E.D.N.Y. 1971); *Balistrieri* v. *Holtzman*, 52 F.R.D. 23 (E.D. Wis. 1971).

■ The parties in the case at bar had been involved in litigation since 1981; the appellant Mrs. Rush left the state and concealed the child after being ordered to return Jennifer to the Wallaces; the Rushes have requested the police to accompany them when exercising their visitation rights; and they have filed numerous petitions in this matter. We simply cannot say that the chancellor manifestly abused her discretion when she refused to subject the appellees to further court action. *See Smith* v. *Smith*, 272 Ark. 199, 612 S.W.2d 736 (1981). Furthermore, we do not find that the appellants were prejudiced by the court's rulings. It was the appellant's attorney who breached the agreement regarding the subject of deposition. Even though he had agreed not to question the appellees about their whereabouts, the second question he asked concerned their present address, and he continued to question them about where they had been, where they had attended church, and whether Patricia Wallace had been in Texas.

For their next point, the Rushes argue that it was error for the judge to deny their motion filed December 2, 1986, alleging bias on the part of the chancellor and asking her to recuse. We disagree.

On the day of the trial, the chancellor permitted the Rushes to put on extensive evidence concerning the chancellor's alleged bias. Mr. Rush testified that when his wife left the state with Jennifer, after the court had ordered that custody of the child be returned to Patricia Wallace, the chancellor held him in contempt of court and ordered him jailed. However, the Rushes point out that when Patricia Wallace left the state with Jennifer, the chancellor refused to hold her in contempt of court and retroactively rescinded that portion of the decree which ordered that the child remain in the jurisdiction of the court. Furthermore, the Rushes stated that they were going to call the chancellor as a witness on the recusal issue. However, the record reflects that while a *subpoena duces tecum* was served requesting that the court produce her private files in the case, the chancellor was not called as a witness.

In the case of *White* v. *Taylor*, 19 Ark. App. 104, 717 S.W.2d 497 (1986), we followed the standard of review discussed by the Arkansas Supreme Court in *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983), which states:

> The fact that a judge may have, or develop during the trial, an opinion, or a bias or prejudice does not make the trial judge so biased and prejudiced as to require his disqualification in further proceedings. *Walker* v. *State*, 241 Ark. 300, 408 S.W.2d 905 (1968). Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. *Narisi* v. *Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). The reason is that bias is a subjective matter peculiarly within the knowledge of the trial judge. We find no Arkansas case where a trial judge has stated that he was without prejudice and could hear a case and without more, we reversed that decision. Thus absent some objective demonstration of prejudice, it is a communication of bias which will cause us to reverse a judge's decision on disqualification.

*White* at 107, 717 S.W.2d at 498.

The Rushes list in their brief eight instances which they allege demonstrate bias on the part of the trial court, three of which concern the motion for continuance which we have already discussed. The remaining five are: (1) that the trial court held Mr. Rush in contempt of court but refused to do so with Patricia Wallace; (2) that the trial court attempted to elicit testimony from Mrs. Rush concerning where she had been when she left the jurisdiction of the court; (3) that the judge had written a letter to the prosecuting attorney alleging that Mrs. Rush had kidnapped the child and that Mr. Rush knew where she was, even though Mr. Rush denied any knowledge of his wife's and Jennifer's whereabouts; (4) that the court maintained a confidential file regarding the case; and, (5) that the judge was going to testify on the recusal motion.

After examining the facts surrounding the allegations of judicial bias, we find no objective demonstration of prejudice; to the contrary, we think that the chancellor has shown great restraint in dealing with the Rushes. The court took no action against the Rushes when they violated her order not to speak to the press. Moreover, there was a firm basis for treating Patricia Wallace and Mrs. Rush differently, although both left the state with the child: Patricia Wallace did so as the custodial parent, and her action was excused by the chancellor upon a specific finding that the Rushes had been harassing the Wallace family. In contrast, when Mrs. Rush took Jennifer out-of-state, she was not the child's custodian and had been ordered to return the child to Patricia Wallace.

As for the chancellor's questioning of Mrs. Rush concerning her residence when she left Arkansas with the child, it must be noted that the court was frustrated at the fact that Mrs. Rush left the state with Jennifer and the chancellor was concerned about where the child had been. When Mrs. Rush refused to answer, the court continued to inquire as to her whereabouts. When it was made clear to the court that Mrs. Rush was pleading the fifth amendment because of possible pending criminal charges, the court allowed Mrs. Rush to remain silent on the issue.

In their third point, the Rushes point out that the court had refused to believe that Mr. Rush did not know the whereabouts of

his wife and Jennifer. However, the court had a reasonable basis for believing that Mr. Rush was not being completely honest. On the day that Mrs. Rush left with Jennifer, Mr. Rush had withdrawn $800.00 from his bank. When the chancellor indicated to the prosecuting attorney that the child had been kidnapped, she also informed the prosecutor that the child had been taken by the grandmother. Because the grandmother had no custodial rights to the child, and because the grandmother had violated the court's order to return the child to its mother, it is understandable that the chancellor was concerned and was attempting to discover under what conditions the child had been living.

The Rushes also attempt to demonstrate prejudice by the fact that the court kept a private file on the case. This file contained newspaper clipping of articles that had been written concerning the case. Most of this publicity, incidentally, had been generated by the Rushes. We see no error in the chancellor taking an interest in what is printed in the newspaper about developments in a case she is handling. The only other thing in the file was a petition, signed by persons at a local mall, that had been mailed to the chancellor concerning the case.

The Rushes' last point concerning recusal, that the trial court should have recused because she was to be called to testify, is no more than an attempt to accomplish indirectly that which they could not accomplish directly. While it is true that a trial judge should recuse whenever it becomes necessary for him to testify, see Elmore v. State, 13 Ark. App. 221, 682 S.W.2d 758 (1985), a judge's refusal to disqualify himself cannot be circumvented by a claim that he will be needed to testify during the recusal motion. The chancellor explained to the parties that she was not prejudiced or biased and that she felt it would be detrimental to the parties to have to start the case all over again. This case had been in her court since 1981, there had been various hearings, and she was familiar with the issues and the parties. We simply cannot say that the chancellor erred in refusing to recuse.

Both the Rushes and ADHS argue that the trial court erred in refusing to make a record of Jennifer's testimony. During the hearing, the chancellor took the child and the attorneys for all parties into chambers and interviewed Jennifer. The attorneys

were permitted to question Jennifer and observe the questioning by the court and other attorneys. After court reconvened, the trial court refused to allow a record to be made of the interview with the child, and, on appeal, the appellants argue that the chancellor erred.

■■ We will not address the merits of this issue because the appellants have failed to preserve any error which may have occurred for appellate review. There is no indication in the record that any objection was made to the procedure used by the chancellor until the interview was over. The time to object was when counsel first knew that the child's statements would not be recorded. Therefore, the objection was untimely. *See Callaway* v. *Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1983). Moreover, there has been no attempt to comply with Rule 6(d), Rules of Appellate Procedure, which provides a means for constructing a record in those cases where no record has been made. If the trial court had continued to refuse to permit a record to be made, relief could have been sought from the Arkansas Supreme Court. When no attempt is made to make a record in compliance with the rule, it is presumed that the matters presented in the unrecorded hearing support the trial court's findings. *Wagh* v. *Wagh*, 8 Ark. App. 122, 644 S.W.2d 630 (1983).

■■ The Rushes' last assignment of error alleges that the chancellor did not have sufficient evidence to determine the best interests of the child. Because the trial court had already decided the issue of custody and returned Jennifer to her mother in 1985, the issue at the 1986 hearing was whether there had been a change of circumstances sufficient to warrant a change in custody. The chancellor's findings in a child custody case will not be reversed unless they are clearly against the preponderance of the evidence. *Ketron* v. *Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the superior position of the chancellor, especially so in those cases involving child custody. *Anderson* v. *Anderson*, 18 Ark. App. 284, 715 S.W.2d 218 (1986). The general rule is that as between parent and grandparent or anyone else, the law prefers the parent, unless the parent is incompetent or unfit. *Perkins* v. *Perkins*, 266 Ark. 957, 589 S.W.2d 588 (1979).

Patricia Wallace testified that at the time of the 1986 hearing Jennifer was six years old and was not yet required to attend school. Mrs. Wallace stated that she worked with Jennifer at home and that the child knew her alphabet; could count to 100 by ones, tens, and fives; could do simple addition and subtraction on her fingers; knew how to spell simple one-syllable words and practiced her handwriting. Mrs. Wallace estimated that she worked on education about two hours a day with Jennifer. The rest of the day Jennifer helped with household chores, worked around the farm with Mrs. Wallace, and played with her newborn younger sister, Erin. Mrs. Wallace testified in detail about the type of meals she prepared for the family, which consisted of eggs, meat, vegetables, fruit, and dairy products.

At the time of the hearing the family lived in a rural area in the state of Ohio; however, Mr. Wallace was unsure if they would return to Ohio because he feared continued harassment now that the Rushes knew where they lived. Immediately after leaving Arkansas they visited Mr. Wallace's family in Missouri and planned another visit after the hearing. The family had also traveled to Pennsylvania for a short visit, but Mrs. Wallace assured the court that, once Jennifer was enrolled in school, such visits would only take place on school holidays.

On cross-examination, Mrs. Wallace admitted that when they first moved to Ohio the family lived for several weeks in a garage that had been converted into a living quarters. Bob Markee, the Wallace's landlord, had provided the space until their present home was ready for occupation. The garage had a concrete floor, wood burning heater and electricity. They were allowed to shower at Mr. Markee's residence, several hundred feet away, and used a portable toilet.

At the time of the trial, the family lived in a two-bedroom mobile home that had indoor plumbing, a bathroom, electricity, a wringer washer, and was heated with a wood burning stove. Mrs. Wallace testified that Jennifer had toys and adequate clothing. Because the newborn child, Erin, was still being breast-fed, she still slept with the parents, but when she was a little older, Mrs. Wallace planned to have her share the other bedroom with Jennifer.

Mr. Wallace testified that he worked on Mr. Markee's farm

in exchange for their living in the trailer and that the agreement included Mr. Markee paying utilities. He also did independent contracting work and sold some vegetables that he had raised. The family had, at times, used savings and income derived from the sale of personal belongings for living expenses. The home is located several miles from a major highway, and, although the family owns only one car, Mrs. Wallace assured the court that they had friends close by who would provide transportation if an emergency arose and Mr. Wallace was away with the car.

Financial ability is but one criteria to judge the right of a parent to the custody and control of his children. *Jones v. Jones*, 13 Ark. App. 102, 680 S.W.2d 118 (1984). The polestar consideration is the best interests and welfare of the children. *Id.* The court's preference for parents is based on the presumption that they will take care of their children, bring them up properly and treat them with kindness and affection, and when that presumption has been dissipated, chancery will interfere and place the child where those parental duties will be discharged by another. *Id.; State v. Grisby*, 38 Ark. 406 (1882). After hearing all the testimony and interviewing Jennifer, the chancellor found that the minor child had been "properly nurtured, loved and trained by her present custodians," and that the Rushes had "in a persistent, continuous manner utilized and used the legal system" in an attempt to remove the child from the mother with "unfounded cause." In the present case, the evidence supports the chancellor's conclusion that the Wallaces have discharged their parental obligations with love and concern despite their precarious financial situation. We cannot say that the chancellor erred in continuing custody with the natural mother, Patricia Wallace.

Finally, ADHS argues that the trial court erred in dismissing them from this case. It is their contention that the trial court should have allowed them to conduct a home study as it had previously ordered. However, ADHS does not cite any authority in support of this proposition. Assignments of error unsupported by convincing arguments or authority will not be considered on appeal unless it is apparent, without further research, that the assignment of error is well taken. *Western Auto Supply Co. v. Bank of Imboden*, 17 Ark. App. 4, 701 S.W.2d 394 (1985). Further, because the chancellor found that the Wallaces were properly nurturing Jennifer, it was within the chancellor's discre-

tion to dismiss ADHS from the case.

After carefully reviewing the record in this case, we find that the chancellor did not abuse her discretion in any respect, nor were her findings clearly erroneous or against the preponderance of the evidence.

Affirmed.

MAYFIELD, J., not participating.