761 S.W.2d 933 (1988)
297 Ark. 270
Deborah Rae (Rawlins) STAMPS, Appellant,
v.
Paul Eugene RAWLINS, Appellee.
No. 88-239.
Supreme Court of Arkansas.
December 19, 1988.
*934 Greg Clark, Bentonville, for appellant.
Johnnie Emberton Rhoads, Rogers, for appellee.
DUDLEY, Justice.
This child custody case was certified by the court of appeals to us to decide whether a chancery court can award custody of a child to a stepparent, rather than to a natural parent. We hold that a chancellor may award custody to a stepparent, but reverse the decision doing so in this particular case.
The stepchild in this case, Ryan, was only three months old when his mother, appellant, and stepfather, appellee, were married. He was about five years old at the time the parties were divorced. In the divorce decree, entered on February 5, 1987, the chancellor awarded custody of Ryan to his mother, appellant, with a right of reasonable visitation in the appellee. Only three weeks later, on February 27, the appellant, mother, filed a petition for modification of the decree on an unrelated matter. The appellee, stepfather, filed a counter-petition requesting modification of the decree with respect to Ryan. On September 29, 1987, a little over six months after the original decree, the chancellor ruled on the merits of the petitions and ordered that split custody of Ryan be placed in appellant and appellee. That is, the appellant and appellee each were awarded custody on an alternating-week basis. In his findings of fact, the chancellor *935 found that the appellee was the only father that Ryan had ever had and that appellee treated Ryan as his own child. Further, and more significantly, the chancellor found that both parties were "fit and proper to have custody."
Almost all of the law in Arkansas regarding custody of children is common law. We have only one statute on custody, and it provides that the award shall be made solely on the basis of the welfare and best interests of the child and must be made without regard to the sex of the parent. Ark.Code Ann. § 9-13-101 (1987). The statute makes no reference to whom custody may be awarded. However, under our case law it is clear that a stepparent can be awarded custody of a minor child. See, e.g., Goins v. Edens, 239 Ark. 718, 394 S.W.2d 124 (1965). Nevertheless, our case law specifically establishes a preference for natural parents in custody matters, and provides that the preference must prevail unless it is established that the natural parent is unfit. Goins v. Edens, supra; Hancock v. Hancock, 198 Ark. 652, 130 S.W.2d 1 (1939); Loewe v. Shook, 171 Ark. 475, 284 S.W. 726 (1926). The court of appeals followed this preference in a case very similar to the one at bar. McKee v. Bates, 10 Ark.App. 51, 661 S.W.2d 415 (1983). The preference is based on the child's best interests.
Here, the chancellor specifically found that the appellant mother was a fit and proper person for custody. Our de novo review of the record sustains that finding. Therefore, custody of Ryan should have been left in the appellant, and it was error for the court to rule otherwise. It makes no difference that split custody, rather than full custody, was awarded.
The appellant next argues that the chancellor erred in changing Ryan's last name to Rawlins. This argument is without merit. The appellee did not ask, either by written pleading or oral request, that Ryan's name be changed. Yet, in his findings of fact the chancellor found that Ryan's surname should be changed. The appellant first argues that the procedure was erroneous. The appellant was cross-examined by the appellee's attorney on the issue of the child's surname, and the chancellor personally asked the appellant a series of seven questions about the names. The appellant should have informally been on notice that the court was considering changing Ryan's last name. ARCP Rule 15 provides in material part: "When issues not raised by the pleadings are tried by ... implied consent of the parties, they shall be treated ... as if they had been raised in the pleadings...." The issue seems to be fully developed, and we see no unfair prejudice to appellant in the matter. Finally, the ruling is in the best interest of Ryan.
Next, appellant argues that the name change was not in compliance with Ark.Code Ann. § 9-2-101 (1987), the statute setting out the formal procedure for a name change. It is true that the name change was not in compliance with the statute, but it was still a perfectly valid procedure. As we explained in Clinton v. Morrow, 220 Ark. 377, 247 S.W.2d 1015 (1952), and Carroll v. Johnson, 263 Ark. 280, 565 S.W.2d 10 (1978), this statute does not repeal the common law power of a chancery court to change a minor's name when it is in the best interest of the minor to so do. The statute simply affords an additional method of effecting a name change and is supplementary to the common law. Further, this is a matter in which the chancellor has broad discretion. Clinton v. Morrow, supra.
Here, the chancellor, in his findings of fact, stated: "I am not at all impressed by the fact that Ryan is being known as someone else. Again being made to feel different." Further, the chancellor found that appellee Rawlins was the only father Ryan had ever known and that appellee treated Ryan as his own. Under these circumstances, we cannot say the chancellor abused his broad discretion in ordering the name change on Ryan's school records. We do note, however, that the procedure used may have violated the biological father's right to notice and due process. See Carroll v. Johnson, 263 Ark. 280, 565 S.W. 2d 10 (1978).
In addition to the custody dispute over the stepson, Ryan, there was a custody *936 dispute over Tara, a biological child of the parties. In the original decree of divorce, granted February 5, 1987, the chancellor awarded custody of Tara to the appellant. On December 22, 1987, he made a change in the award. The appellant now argues that there was no material change in circumstances between the two decrees and, therefore, the chancellor erred in changing custody.
Our law on the subject is clear. A judicial award of custody should not be modified unless it is shown that there are changed conditions which demonstrate that a modification of the decree is in the best interest of the child. Feight v. Feight, 253 Ark. 950, 490 S.W.2d 140 (1973). The only other time a change is permissible is when there is a showing of facts affecting the best interest of the child that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered. Henkell v. Henkell, 224 Ark. 366, 273 S.W.2d 402 (1954).
The chancellor did not make a finding of fact about a change in circumstances. However, our de novo review of the record reveals that there was sufficient evidence from which the chancellor could have found a change in circumstances after the initial decree. It includes testimony that the appellant screamed and yelled at the appellee in front of Tara; that appellant telephoned the appellee numerous times while appellee was attempting to visit Tara; that Tara was dirty when appellee picked her up; that she had an infected ear and a dirty scalp; that on four separate occasions she had bruises on her lower body, which could have been caused by appellant's use of excessive force; that appellant forced Tara to eat in the garage on at least one occasion, and that when Tara rang the doorbell and asked for a glass of water she was spanked; and finally, that Tara wanted to live with appellee, and when told she had to go home with appellant, she suffered stomach problems.
The foregoing is sufficient to show a change in circumstances, therefore, the chancellor did not err in modifying the decree.
Affirmed in part; reversed in part; and remanded for entry of a decree consistent with this opinion.
HICKMAN, J., dissents.
GLAZE, J., concurs in part and dissents in part.
GLAZE, Justice, dissenting in part and concurring in part.
The parties' original agreement was incorporated in their divorce decree, and it provided that both parties were fit and proper persons to have primary care and custody of the minor children, Tara and Rane. The decree awarded the parties immediate joint custody of Tara, but gave the appellant initial custody of Rane until he attained the age of two years, at which time the parties would commence exercising joint custody of both Rane and Tara. The parties' agreement delineated the manner in which the joint custody of both children would be exercised. The parties' agreement and decree further provided that appellee would have visitation rights with Ryan, appellant's son and appellee's stepson.[1]
Only a few weeks transpired after the parties' divorce when both parties petitioned the trial court, claiming that a material change in circumstances occurred that warranted the court's modification of the parties' original agreement and decree. The chancellor heard conflicting charges by each party against the other and concluded that both were fit and proper parties to have custody of the children. Consistent with that holding, the chancellor never mentioned a single change in circumstances that occurred since the parties' original decree had been entered. The judge attentively listened to the charges of the respective parties and their witnesses, and he methodically noted and specifically discounted most of the serious ones. As an example of how the chancellor resolved some of the parties' countervailing charges, I note the following excerpt from the chancellor's findings:

*937 "It wasn't developed but the Court concluded, may have not tied a square knot but I've tied a knot in regards to Mr. Rawlins drinking. He seems to be one of those fellows who has a beer or two when he comes home from work. I'm not overly impressed by drinking in front of the children. Lots of fathers do it. Mothers do it. I don't encourage it mainly because I don't have much use for. Well, I don't think drinking is, alcohol is. It's different than smoking marijuana. All the studies have shown that. But I don't approve of it, quite frankly. I certainly don't approve of the use of marijuana or cocaine or any other illegal drug inside or outside the presence of the children. It's a crime to do it. Society has defined it as a crime. Especially, of course, there is no proof, the Court is not convinced that there has been any of that in the presence of the children. If I were, my decision in this case would be a little bit different than what you're gonna hear in a few minutes. But be aware that if there were proof of use of illegal drugs in the presence of the children or if there was proof of intoxication by alcohol in the presence of the children, the Court would do differently than what I am doing." (Emphasis added.)
Even though the chancellor's findings reflect no material changes in circumstances had occurred since the parties' original decree was entered, the chancellor still proceeded to modify the decree by awarding both parties joint custody of Ryan and changing the manner in which the parties were to exercise joint custody of Tara. In doing so, the chancellor clearly erred.
It has been long-settled as to when a chancellor is empowered to modify a custody decree. In the early case of Weatherton v. Taylor, 124 Ark. 579, 187 S.W. 450 (1916), this court, quoting from 9 Ruling Case Law, page 476, stated in pertinent part as follows:
A decree fixing the custody of a child is, however, final on the conditions then existing, and should not be changed afterward unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child.
The majority court, in the present case, concedes the chancellor did not make a finding of fact about a change in circumstances. In fact, the majority, in its opinion, relied on the chancellor's finding that the appellant mother was a fit and proper person for custody, when it held the chancellor erred in modifying the original decree by removing Ryan from the appellant's sole custody and in awarding joint custody of Ryan to the parties.
By some convoluted reasoning, the majority, on the same record, then upholds the chancellor's decision to modify the parties' original decree by changing the manner in which the parties had agreed to exercise joint custody of Tara. In reaching the holding concerning Tara, the majority now chooses to ignore the chancellor's finding that the appellant was a fit and proper person for custody. For support of this part of its decision, the majority relies on many of the allegations made by the appellee against the appellant. It is all too obvious that the chancellor considered these charges as well as those lodged by the appellant against appellee, and after doing so, he gave no merit to them, finding both parties worthy of having custody of the children. This court, in review, is in no position to second guess the chancellor in this respect, and it commits serious appellate error when it does so.
The chancellor manifested great understanding and patience in this custody dispute, but he erred when he proceeded to change the parties' original decree when the evidence reflected that no material circumstances had arisen to warrant a modification. While the modification hearing was the first real opportunity that the chancellor had to get acquainted with the parties involved in this matter, the rule governing these custody issues is the same: the parties' decree must remain unchanged unless altered conditions have occurred since the decree or material facts existed, but were unknown to the court, when the decree was *938 entered. In my view, the majority is clearly wrong in its holding as to the custody issue involving both Ryan and Tara. Regarding the court's holding as to Ryan's name change, I concur.
NOTES
[1] The decree determined the custody of three children, Tara, Rane and Ryan. Rane's custody is not at issue in this appeal.