Karen RIDDLE *v.* Ronald Gene RIDDLE

CA 89-11                                    775 S.W.2d 513

Court of Appeals of Arkansas
Division II
Opinion delivered September 6, 1989
[Rehearing denied October 25, 1989.*]

*Rogers, J., would grant rehearing.

*Hardin, Jesson & Dawson,* by: *Robert T. Dawson* and *J. Leslie Evitts III,* for appellant.

*Willard Crane Smith, Jr.,* for appellee.

JAMES R. COOPER, Judge. The appellant in this child custody case, Karen Riddle, is the mother of Robert Ibison and Brian Riddle. Robert Ibison was born on September 21, 1983. The appellee is not his father. The appellant raised him as a single parent until her marriage to the appellee, Robert Gene Riddle, in February 1986. Brian Riddle was born to the marriage on August

10, 1987. The parties separated on May 7, 1988, and the appellant filed a complaint for divorce on May 13, 1988. After a hearing, the chancellor granted a divorce to the appellee on his counterclaim, granted custody of Robert Ibison to the appellant, and granted custody of Brian Riddle to the appellee. From that decision, comes this appeal.

The appellant contends that the chancellor erred in failing to grant her custody of both children, and she argues that the chancellor clearly erred in finding that there was a closer bond between Brian and the appellee than between Brian and the appellant. She also contends that the chancellor erred in splitting custody of the children in the absence of exceptional circumstances. We affirm.

We first address the appellant's contention that the chancellor erred in finding a closer bond between Brian and the appellee. This point is, in fact, an argument that the chancellor erred in concluding that it would be in Brian's best interest to be in the appellee's custody because: (1) the appellant had been Brian's primary caretaker during the marriage; (2) awarding custody to the appellee is tantamount to awarding custody of Brian to his paternal grandparents; (3) the chancellor's award of custody to the father was an overreaction to the abolition of the "tender years" doctrine unsupported by the evidence; and (4) it was impossible for the chancellor to determine that a closer bond existed between Brian and the appellee when the chancellor had never seen the child.

Although we review chancery cases *de novo*, we do not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence. Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the chancellor's superior opportunity to assess credibility. Ark. R. Civ. P. 52(a); *Callaway v. Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1983).

The appellant asserts that the evidence shows clearly that she was the primary caretaker of the children and that the appellee offered only minimal assistance to her. However, the record is replete with evidence to show that the appellee is capable of caring for a young child, and that he had been an active parental caretaker during the marriage. There was testimony

that the appellee had prepared meals for the children and had dressed and bathed Brian. There was evidence that the appellee had acted as the primary daytime caretaker for the children when the appellant worked a day shift and the appellee worked an evening shift. The appellant's sister, called as the appellant's witness, testified that the appellee is a good father who took good care of the children when they were in his care, and she stated that she had no concern about the appellee's ability to care for the children. Finally, the appellant herself admitted that the appellee had always helped care for Brian.

The appellant states that, under the guise of granting custody to the appellee, the chancellor in fact awarded custody of Brian to his paternal grandparents, and asserts that, should the chancellor's decision be affirmed, "it will be the appellee's parents who will be assuming the responsibility for the continued care, education, and control of Brian, rather than the Appellee." This assertion is not supported by the record. Although it is undisputed that the appellee has been living with his parents since the parties' separation, he testified that this arrangement was temporary and that he intended to find his own lodgings after the divorce and custody questions were concluded. He also testified that, although his mother had helped with the boys while they were in his custody after the separation, he had been the primary caretaker. He testified that during this time he had returned from work at 3:00 p.m., picked the children up at their day care, cared for them until the next morning, and dropped them off at the day care. We find no merit to this argument.

Next, the appellant asserts that the chancellor's order granting custody of Brian to his father was an overreaction on the chancellor's part in the form of an exaggerated attempt to avoid application of the "tender years" doctrine. This point is based solely on the following statement by the chancellor at the hearing: "[T]he tender years doctrine is no longer something this Court will consider." The "tender years" doctrine is a rule of law whereby a court will presume the mother to be the more suitable custodian of a child of tender years and will award custody to her for the sake of the child's welfare. See 59 Am. Jur. 2d Parent and Child § 25 (1987). However, Ark. Code Ann. § 9-13-101 (1987) provides that child custody awards in divorce actions shall be made solely in accordance with the best interests of the children

and without regard to the sex of the parent. In light of our statement in *Drewry* v. *Drewry*, 3 Ark. App. 97, 622 S.W.2d 206 (1981), that the clear language of § 9-13-101 indicates that the legislature fully intended to abolish any gender-based legal preference in child custody determinations, the chancellor's comment was merely a correct statement of the law. We find no evidence to support the appellant's allegation of overreaction.

■ The appellant also asserts that the chancellor erred in finding that there was a closer bond between Brian and the appellee when the chancellor had never seen the child. The chancellor found that:

> [B]etween the two parties, the father has demonstrated more devotion to the parties' child, Brian, and has also shown himself to be capable of physically caring for the child and the Court finds that there is a deeper emotional attachment between him and the child than there is between him — between the child and the Plaintiff.

We think the chancellor's statement indicates that, between the parties, he found the appellee to be the parent most devoted and emotionally attached to Brian, a finding which is clearly relevant to Brian's best interest and one which could be made without the child being present. Both parties expressed love for the children in their testimony. The chancellor's finding that the appellee was the more devoted must therefore have been based on his evaluation of the earnestness, sincerity, and veracity of the parties as they testified. Personal observation is of great value to a court which is called upon to choose between mother and father in a custody case. *See Holt* v. *Taylor*, 242 Ark. 292, 413 S.W.2d 52 (1967). Chancellors in such cases must utilize, to the fullest extent, all their powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. We know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as much weight as those cases involving minor children. *Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981). We will not disturb the chancellor's finding on this issue. We hold that the chancellor did not clearly err in finding it to be in Brian's best interest to grant custody to the appellee.

The appellant next contends that, given the chancellor's

finding that the appellant was not an unfit parent, the chancellor erred in granting custody of one child to each of the parties, rather than granting custody of both children to the appellant. The appellant cites *Stamps* v. *Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988), for the proposition that custody of a child may be awarded to a stepparent only when the natural parent is shown to be unfit, and *Ketron* v. *Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985), for the proposition that young children should not be separated from one another by dividing their custody in the absence of exceptional circumstances. On the basis of this authority, she argues that she was correctly granted custody of Robert Ibison because she was not shown to be unfit, and that she must therefore be granted custody of Brian to prevent the children from being separated.

We do not agree that the law of child custody must be applied in such a rigid and mechanical fashion. Moreover, the cases cited by the appellant do not mandate such a result. *Ketron* v. *Ketron*, *supra*, is cited as authority for the argument that the prohibition against separating children applies with equal force in cases where the children are half-siblings. A careful reading of *Ketron*, however, shows that we did not so hold in that case, but instead merely noted that the chancellor's reluctance to divide custody of the half-brothers was "consistent with" the rule that young children should not be separated from each other in the absence of exceptional circumstances. *Ketron*, 15 Ark. App. at 328.

■■ Our chief concern with the theory advanced by the appellant is that it requires no consideration of the children's best interests: should the chancellor find that the natural parent of one step-sibling is not unfit and that exceptional circumstances are not present, he must, under the appellant's formulation, grant custody of all the children to that parent, without considering whether their best interests would be better served by granting custody to the other parent. The appellant's theory is thus in conflict both with Ark. Code Ann. § 9-13-101 (1987), which mandates that custody be awarded "solely in accordance with the welfare and best interests of the children," and with the well-settled principle that, in child custody determinations, the best interests of the child is the paramount concern. *See, e.g.,* *Stephenson* v. *Stephenson*, 237 Ark. 724, 375 S.W.2d 659 (1964)

(unyielding consideration); *Benson* v. *Benson,* 237 Ark. 234, 372 S.W.2d 263 (1963) (controlling consideration); *Haller* v. *Haller,* 234 Ark. 984, 356 S.W.2d 9 (1961) (polestar). In the case at bar there was evidence to show that, of the parties, the appellee had the more settled lifestyle, while the appellant engaged in numerous activities which took her out of the home and required that the child be left in the care of another. Moreover, the chancellor specifically found that it would be in the best interest of the appellee's stepson, Robert, for the appellee to be granted visitation. We hold that the circumstances justified the chancellor's order dividing custody of the half-brothers, and we affirm.

Affirmed.

MAYFIELD, J., agrees.

ROGERS, J., concurs.

JUDITH ROGERS, Judge, concurring. I reluctantly concur with the majority opinion. The chancellor's findings in a child custody case will not be reversed unless they are clearly against the preponderance of the evidence. *Rush* v. *Wallace,* 23 Ark. App. 61, 742 S.W.2d 952 (1988). Because our standard of review is so stringent, I cannot say that the chancellor's findings are clearly erroneous. My concern in this case is the absence of stated findings addressing the custody of the parties' child and the separation of the minor children.

An examination of the record indicates that the paternal grandfather, Johnnie Riddle, testified that he counted the number of days his son, appellee, had custody of the two children upon the parties' separation. He testified, "it was important to write them down even though he wasn't seeking custody, because he was going to, and he knew that and I knew that." This chain of events calls into question appellee's motive and sincerity in seeking custody of these children. The evidence reveals that originally appellee sought custody of the parties' child, Brian Riddle. Appellee then amended his counterclaim asking for custody of both Brian Riddle and Robert Ibison, appellant's child.

The appellant's sister, Rita Tuck, testified that she admired appellant and that appellant was a good mother who took care of her children. Only on cross examination did she testify that

appellee took pretty good care of the children when appellant was not around. The day care worker, Carol Allen, testified that the children were well-adjusted. She further testified that appellant brought and picked up the children most of the time.

Certainly both parties had proven themselves fit and capable of taking care of the children. Absent the chancellor being able to see any interaction between the children or between the children and their parents, it is difficult to read the record and conclude that one party had demonstrated more love and devotion than the other party. This determination is made even more difficult by the fact that no expert testimony was given and no home study was conducted.

One factor to be considered in the determination of the best interest of the child is the importance of keeping siblings and half siblings together. That is why we have said in past cases that when separating young children exceptional circumstances must be present. See Ketron v. Ketron, 15 Ark. App. 325, 692 S.W.2d 261 (1985). This is however only one factor in the determination, but it is and should be an important factor. When families separate, the more stability we can provide in continuity of care and the presence of familiar faces, the more important this factor becomes. I am not convinced, however, that the chancellor did not consider this factor when he found it was in the best interest to separate these children and award custody of Robert Ibison to appellant and Brian Riddle to appellee. I therefore concur with the majority opinion.

My concern is that we continue to weigh the impact of separating siblings in custody cases, and that we should try to continue to keep young siblings together. We must assume the chancellor considered the splitting of the children and decided that the other factors such as appellee's love, devotion and ability to care for the child outweighed this child's further separation from another family member.