Phyllis Karen (Barrett) HAMILTON *v.*
Randall Ray BARRETT

98-1536 989 S.W.2d 520

Supreme Court of Arkansas
Opinion delivered May 13, 1999

*Benny M. Tucker* and *George M. Callahan*, for appellant.

*J. Sky Tapp*, for appellee.

Donald L. Corbin, Justice. ▆ This is a child-custody case. Appellant Phyllis Karen Hamilton (Karen) appeals the judgment of the Montgomery County Chancery Court awarding custody of the parties' two minor children to her ex-husband, Appellee Randall Ray Barrett (Randy). In an unpublished opinion, the Arkansas Court of Appeals affirmed the chancellor's ruling. *See Barrett v. Barrett*, CA 97-1132, (Ark. App. December 9, 1998). We granted Appellant's petition to review that decision, which was rendered by a tie vote, pursuant to Ark. Sup. Ct. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Huffman v. Fisher*, 337 Ark. 58,

987 S.W.2d 269 (1999). For the reasons set forth below, we affirm the chancellor's decision.

The record reflects that Randy and Karen were married on June 5, 1982. Two children were born of the marriage: Michael, born on August 19, 1986, and Randi Michelle, born on July 11, 1989. Randy is president of the Mount Ida School Board, and Karen is an art teacher in the same school system. The parties separated on or about June 22, 1993, and a divorce decree was entered on September 26, 1994. Incorporated into the decree was the parties' child-custody and property-settlement agreement, which provided that the parties would have joint custody of the children, with Karen being the primary custodian of the children. Randy agreed to pay child support in the amount of $120 per week, in accordance with the Family Support Chart. The custody and settlement agreement also prohibited both parents from having members of the opposite sex, to whom they were not married, stay overnight in their homes during any visitation or custodial periods.

Randy married Jennifer Gossett on December 31, 1994, and they had a child on September 24, 1996. Karen married Jody Hamilton on November 10, 1996. On August 1, 1995, Randy filed a petition for specification of visitation rights and reduction in child support. That petition was never ruled upon by the chancellor. Randy filed an amended petition on August 29, 1996, this time requesting a change of custody, and alternatively for a reduction in child support. The amended petition reflected in part that since the divorce decree was entered, there have been several substantial changes in circumstances, including Randy's remarriage, the birth of a child from his remarriage, changes in Randy's income and cattle operation, and an oral agreement reached by the parties for joint custody that Randy had maintained since the end of the 1996 school year. Karen denied that there had been any material change in the parties' circumstances since the divorce.

During the hearing below, evidence was presented that was of a favorable nature to both parents. For example, several witnesses, including neighbors, the elementary school principal,

teachers, and in-laws, testified that both Karen and Randy appeared to be good parents. There was also testimony that both parents were particularly interested in the children's performance at school, and that both frequently participated in the children's extracurricular activities. The evidence also showed that both Michael and Randi Michelle were bright, well-adjusted children who performed well at school. The chancellor found that both Randy and Karen were very responsible, good parents; that both had good, but different, discipline skills; and that both did a good job at enforcing each other's prior discipline decisions.

Much of the remaining evidence concerned Karen's relationships with men, particularly her actions in permitting male guests to stay overnight while the children were present, in direct violation of the parties' custody and settlement agreement. Gary Breashears testified that he had a relationship with Karen, which began around August or September 1993, during Karen and Randy's separation, and continued until November 1995. He stated that on one occasion in November 1995, he spent the night with Karen in her home while the children were present. On two other occasions, he, Karen, and the children had gone on overnight trips. During a trip to Alabama, which lasted several days, the four of them shared a motel room. Although he initially claimed that he had slept on the couch, he later admitted that there was no couch in the motel room. He then stated that he was not sure whether he and Karen had slept in one bed while the children slept in the other bed. In any event, he stated that Karen had not expressed a problem with the sleeping arrangements. Breashears also described a camping trip, during which he, Karen, and the children slept in tents. He admitted that he and Karen had slept together on that trip.

Jody Hamilton testified that he began dating Karen in October 1995. He stated that he had a sexual relationship with Karen between October and December 1995, while she was still dating Breashears. He indicated that between December 1995 to November 10, 1996, the date he and Karen were married, he spent the night at Karen's home on numerous occasions. He

admitted that the children had been present on some of those occasions. Indeed, he stated that the children had seen him in bed with their mother. Although he conceded that their actions were inappropriate, he justified them on the basis that they only occurred after he and Karen had decided to get married.

Karen admitted engaging in conduct that violated the custody and settlement agreement. Although she denied having ever slept with Breashears in her home while the children were present, she admitted that she had done so with Hamilton, prior to their marriage. Like Hamilton, Karen stated that she felt such conduct was appropriate because they were about to be married, and the children knew of their plan to wed. In contrast to this testimony, there was no evidence that Randy had violated the parties' agreement by having female guests overnight at his home when the children were in his care.

At the conclusion of the hearing, the chancellor awarded Randy care and custody of the two minor children, with Karen being granted liberal visitation. The chancellor made no specific findings of fact on the issue of material changes in circumstances; however, in response to Karen's directed-verdict motion, the chancellor found that Randy had presented evidence of a material change in circumstances. Specifically, the chancellor concluded that two events, Karen's marriage to Hamilton and a child being born to Randy and Jennifer, satisfied the requirement that a substantial change of circumstances existed.

In reviewing chancery cases, we consider the evidence *de novo*, but will not reverse a chancellor's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). We give due deference to the superior position of the chancellor to view and judge the credibility of the witnesses. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997). This deference to the chancellor is even greater in cases involving child custody, as a heavier burden is placed on the chancellor to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.

*Anderson v. Anderson*, 18 Ark. App. 284, 715 S.W.2d 218 (1986). Where the chancellor fails to make findings of fact about a change in circumstances, this court, under its *de novo* review, may nonetheless conclude that there was sufficient evidence from which the chancellor *could* have found a change in circumstances. *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988).

Our law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Digby v. Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered. *Jones*, 326 Ark. 481, 931 S.W.2d 767. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.*

Before reaching the merits of this appeal, we first address an issue raised by one of the dissenting opinions from the court of appeals, concerning the evidence of Karen's having male guests overnight in her home while the children were present. The dissent pointed out that the issue was not properly before the chancellor because Randy had failed to specifically plead it as a material change of circumstance. We disagree with that reasoning, as it is clear from the record that this issue was fully litigated, without objection by Karen. Arkansas Rule of Civil Procedure 15(b) provides in part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 15(b) provides further that the failure to amend the pleadings does not affect the result of the trial on these issues. *See also Hope v. Hope*, 333 Ark. 324, 969 S.W.2d 633 (1998); *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). Thus, the issue of Karen's

having violated the custody and settlement agreement was properly presented to the chancellor and, likewise, is properly before this court for *de novo* review.

As to the merits of the case, Karen argues that the evidence failed to demonstrate that any material change in circumstance had occurred since the parties' divorce, and that the chancellor thus erred in awarding custody to Randy. She further asserts that the court of appeals erred in refusing to apply this court's holding in *Jones*, 326 Ark. 481, 931 S.W.2d 767, pertaining to a change in circumstances of the noncustodial parent. We disagree with both arguments.

In the first place, Karen's reliance on our holding in *Jones*, is misplaced. She asserts that *Jones* stands for the proposition that the noncustodial parent's remarriage cannot be properly considered by the chancellor in determining whether a modification in custody is warranted. This interpretation is too narrow. In *Jones*, this court held that based on the facts presented, Dr. Jones's remarriage did not constitute a material change in circumstances. In other words, the holding in *Jones* merely underscores the rule that changes in circumstances of the noncustodial parent, including a claim of improved life because of remarriage, were not alone sufficient to modify an order of custody. Indeed, during oral argument before this court, Dr. Jones admitted that at the time of the divorce decree, it was within his reasonable contemplation to remarry. Given those facts, this court held:

> Stated simply, Dr. Jones cannot use the circumstances he created as grounds to modify custody. Given his awareness of the circumstances at the time he voluntarily entered into the agreement to award custody of Cameron to Ms. Jones, we cannot agree that his remarriage constituted a material change in circumstances.

*Id.* at 491, 931 S.W.2d at 772.

In sum, the holding in *Jones* was not intended to prohibit the chancellor from ever considering the event of a noncustodial parent's remarriage as a change in circumstances affecting

the best interest of the children. Rather, it is limited to the facts of that case, wherein there was evidence that the noncustodial parent's remarriage was reasonably contemplated at the time he entered into the custody agreement and, thus, could not have constituted a change in circumstances arising since the entry of the prior order. The *Jones* decision is further distinguished from the instant case in that the decision rested largely on Dr. Jones's repeated procurement of *ex parte* orders. Moreover, the *Jones* court held that the chancellor had erroneously shifted the burden to Ms. Jones to prove her emotional stability. Accordingly, *Jones* is not controlling for the above reasons.

In the second place, we disagree with Karen's assertion that there was no evidence of material changes in the parties' circumstances. Testimony was presented demonstrating that during 1995 and 1996, after her divorce from Randy, Karen entertained both Breashears and Hamilton overnight in her home, or in other locations, while the children were present. The parties' custody and settlement agreement, entered on September 20, 1994, specifically provided that neither parent was to have members of the opposite sex to whom they were not married stay overnight while the children were in their care. That agreement was incorporated into the divorce decree; thus, Karen is wrong in asserting that there was no noncohabitation order entered by the chancellor. We have held that the purpose of such an order "is to promote a stable environment for the children, and is not imposed merely to monitor a parent's sexual conduct." *Campbell*, 336 Ark. at 389, 985 S.W.2d at 730, (citing *Ketron v. Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1995)). In the event that a parent violates the order, the chancellor may take necessary, even drastic, steps to ensure that the children are raised in a proper custodial environment. *Id.* At a minimum, a violation of such an order may be considered by the chancellor as a material change in circumstances affecting the best interest of the children. Here, proof was presented that Karen's behavior violated the parties' custody and settlement agreement. This evidence, combined with the events of Karen's remarriage and the birth of Randy's child, demonstrates material changes in the parties' circumstances. Thus, the

chancellor's decision to award custody to Randy is not clearly erroneous.

 Additionally, we note that Karen takes issue with the court of appeals' conclusion that Randy met his burden of proving material facts that were unknown to the chancellor at the time of the original custody award. She argues that the issue of what the chancellor knew prior to entering the decree and custody order was never raised by Randy below, and is thus not proper for consideration on appeal. There is no merit to this argument for two reasons. First, the chancellor informed the attorneys at the beginning of the hearing that they should only present evidence of events that occurred after the divorce decree was entered, thus acknowledging the principle that in custody-modification cases, courts usually restrict evidence to those facts arising since the prior order. *See Campbell*, 336 Ark. 379, 985 S.W.2d 724. Secondly, our *de novo* review of the evidence reveals that the conduct between Karen and Breashears and, later, between Karen and Hamilton occurred after entry of the decree and custody order on September 26, 1994. Thus, it is irrelevant whether the issue of the chancellor's previous knowledge was raised below, as it is clear that the evidence presented at the modification hearing demonstrated that Karen engaged in conduct in violation of the custody and settlement agreement *after* the custody order was entered.

In sum, we conclude that the chancellor was presented with facts demonstrating a material change in circumstances, arising since the prior order of custody, such that a modification of custody would be in the best interest of the children. We thus affirm the chancellor's decision to award custody to Randy.