Henry William ANDERSON *v.* Kathryn Suzanne ANDERSON

CA 86-67                                          715 S.W.2d 218

Court of Appeals of Arkansas
Division II
Opinion delivered September 10, 1986

*William R. Wilson, Jr.*, for appellant.

· *David Rees*, for appellee.

DONALD L. CORBIN, Judge. Appellant, Henry William Anderson, Jr., appeals a decision of the Craighead County Chancery Court refusing to grant his petition for a change of custody of his minor son from appellee, Kathryn Suzanne Anderson (Beightol), to appellant. We affirm.

Custody of the minor son, Will Anderson, then age 5, was awarded to appellee upon the entry of a decree of divorce in April 1982, subject to appellant's right to visitation. Appellant filed his petition for change of custody on March 13, 1985, and the matter was heard by the chancellor on July 2, July 30, and August 16, 1985. On November 13, 1985, an order was entered denying appellant's request for a change of custody.

Appellant first contends that the trial court erred in failing to give adequate consideration to the minor son's preference to live with his father.

While a child's preference is not binding upon the court, *Malone* v. *Malone*, 4 Ark. App. 366, 631 S.W.2d 318 (1982), it is certainly to be considered along with all other factors when the court makes a custody determination. *Watson* v. *Watson*, 271 Ark. 294, 608 S.W.2d 44 (Ark. App. 1980). We stated in *Watson, supra*, that the supreme court had approved the practice of considering the wishes of children, some of them quite young, with respect to custodial preference. However, we noted there that we had found no case denying the chancellor the discretion to decline to give weight to such testimony. Contrary to appellant's argument, it is evident that the chancellor in the instant case carefully considered the evidence presented on behalf of the parties. It is even more clear that the chancellor gave due consideration to the minor son's preference to live with appellant as reflected by the chancellor's letter exhibit of November 13, 1985, to wit:

> Having given a great deal of thought to all the facts and circumstances which weigh on the court's decision as to what would be in the best interest of the nine year old boy whose custody is the issue in this case, I have concluded that Will should remain in the care and custody of his mother. In arriving at this conclusion, I attempted, as best

I could, to look at every plus and minus on both sides, and in effect, considered and decided the matter as though it was an original award, as well as whether there had been a significant change in circumstances which would dictate a change in custody. I obviously reached the same result in both instances.

. . . .

. . . As indicated by the testimony, it will be a difficult and trying time for Will, in view of his testimony as to where he wanted to live. I gave Will's expressed preference much thought, weighing the relative effect that a denial of his wishes might have on his mental well-being. Fortunately, Will has an existing family unit, and a sound relationship with Kayla, both of which were very important, not only to Will but to the Court. With the continued attention to the potential problem indicated, I have no doubt but that Will will continue the steady improvement he has shown. I might also make a note that there was also testimony regarding potential problems if custody of Will was changed and he had new adjustments to make.

We cannot conclude the chancellor did not accord the son's preference proper weight and, therefore, find no merit to this contention.

Appellant's next three arguments for reversal concern findings by the chancellor which appellant contends are clearly erroneous or clearly against the preponderance of the evidence. He alleges that appellee's meretricious relationship constituted a sufficient change of circumstances justifying a change of custody and that appellee's subsequent marriage did not temper her reprehensible conduct. Appellant also alleges error in the trial court's finding that it was in the best interest of Will to remain with appellee.

The principles governing the modification of custodial orders are well settled and require no citation. In all such cases the primary consideration is the best interest and welfare of the child and all other considerations are secondary. Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either of them. In determining

matters of child custody, a chancellor has broad discretion, which will not be disturbed unless manifestly abused. The burden of proving a subsequent material change of circumstances justifying a change of custody is on the party seeking the modification. *Sweat* v. *Sweat*, 9 Ark. App. 326, 659 S.W.2d 516 (1983).

██ It is also well settled that, although this court reviews chancery cases *de novo* on the record, the findings of a chancellor will not be disturbed unless clearly against a preponderance of the evidence. Since the question of preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. ARCP Rule 52(a); *Callaway* v. *Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1983). This deference to the chancellor is even greater in cases involving child custody. In those cases a heavier burden is placed on the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony, and the child's best interest. We have often stated that we know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as great a weight as those involving minor children. *Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981).

The evidence adduced established that in November of 1984, appellee allowed Rick Beightol to move into the home shared by her with her minor son Will and her fifteen-year-old daughter by a previous marriage, Kayla. This living arrangement existed until March of 1985 when appellee and Rick Beightol were married. Appellant alleged in his petition for change of primary custody which was filed in March of 1985 that this living arrangement as well as appellee's disparaging remarks about appellant in the presence of the parties' child constituted a material change of circumstances justifying a change of custody.

The chancellor in the instant case stated in his letter opinion as follows:

> The conduct of Mrs. Beightol in permitting her now-husband to share her bed in the children's home, reprehensible as it may have been, was certainly tempered by their subsequent marriage. Mr. Beightol, from the testimony, was shown to be an active participant in rearing both Kayla and Will, and both expressed their love for him.

The supreme court and this court have never condoned a parent's promiscuous conduct or lifestyle when such conduct has been in the presence of the child. *Ketron v. Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). Although our courts have never condoned such conduct, we have always recognized a distinction between human weakness leading to isolated acts of indiscretion, which do not necessarily adversely affect the interest of a child, and that moral breakdown leading to promiscuity and depravity, which render one unfit to have custody of a minor. *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986), citing *Harris v. Gillihan*, 226 Ark. 19, 287 S.W.2d 569 (1956), and *Blain v. Blain*, 205 Ark. 346, 168 S.W.2d 807 (1943).

Appellee testified that she discussed the matter of Rick Beightol moving into the home with her children prior to Thanksgiving and that she felt at that time it was a good decision. Appellee's daughter told appellee that she loved and respected Rick and Will told appellee that he hoped they would marry because he thought Rick would make a good stepfather and that he wanted to be a "Beightol." Appellee further testified that her children's feelings in this regard as well as their concern over another failure in marriage led her to make the decision to allow Rick to move in. Appellee stated that she and Rick had already planned to marry when appellant filed his petition for change of custody. However, appellee testified that she would never do anything to jeopardize her custody of Will and admitted that "I might not have made the right choice."

Based upon our *de novo* review of the evidence, we cannot say the chancellor was clearly erroneous in finding that appellee's relationship with Rick Beightol did not constitute a sufficient change of circumstances justifying a change of custody or that appellee's subsequent marriage to Rick tempered her reprehensible conduct. In so holding, we note that the chancellor was in a superior position to assess the sincerity of appellee's atonement for allowing Rick Beightol to move into the home without benefit of marriage, her subsequent marriage to Rick and the effect of this transgression on the welfare of Will.

We also find no error in the chancellor's determination that it was in the best interest of Will to remain with appellee. Appellant contends that this finding is in error because: (1)

appellee's concern for Will was sporadic; (2) appellee's living arrangement with Rick Beightol was against Will's best interest; (3) appellee had been untruthful in her testimony regarding her business in Dallas; and (4) appellee's insistence that she be allowed to remain in the courtroom while her son testified was against his best interest.

A summary of the evidence shows that Will was initially preoccupied with thoughts of self-destruction after his move to Dallas and as stated by Dr. Joan E. Berger, who examined Will shortly upon his arrival in Dallas, his "experience of life is like that of a war ravaged child trying to pick up the pieces of his life after a bomb shelling. The events of the last three years have left him tormented by confused feelings, guilt, and fear." The record reflects that all of the psychological reports concluded that one of the primary causes of Will's psychological problems was the lengthy and traumatic divorce his parents had experienced. There was also evidence of Will's learning disabilities as well as his lack of self-esteem and immaturity. Lay testimony from teachers and friends, however, was significant in showing the progress which Will had recently made in overcoming his problems and that testimony was unrebutted.

Contrary to appellant's argument, the evidence established that appellee was a good mother to Will. It is also important to note the chancellor's conclusion that appellant was an exemplary father to Will. However, the issue here is not which party is the better parent. The primary consideration is the best interest and welfare of Will and all other considerations are secondary. In concluding that Will should remain in the care and custody of appellee, the chancellor noted that Will had a sound relationship with his sister, an existing family unit in Dallas and also considered both expert and lay testimony to the effect that there would be potential problems if custody was changed and Will was faced with making new adjustments.

■ Appellant focuses again on appellee's relationship with Rick Beightol prior to their marriage as being against Will's best interest. As we have previously stated, the chancellor determined that her subsequent marriage tempered appellee's conduct in permitting Rick Beightol to share her bed in the children's home. In *Ketron* v. *Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985),

we distinguished the courts' decisions in *Digby* v. *Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978), *Scherm* v. *Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984), and *Bone* v. *Bone*, 12 Ark. App. 163, 671 S.W.2d 217 (1984). Those cases concerned changes of custody where there was evidence of illicit relationships and we noted in *Ketron* that those decisions relied upon facts which indicated that the parent denied custody had failed to care properly for the children. Appellee's isolated act of indiscretion associated with allowing Rick Beightol to move into her children's home was unquestionably poor judgment on her part but was not sufficient in and of itself to constitute a material change of circumstances justifying a change of custody to appellant. In addition, the uncontradicted testimony of the witnesses established that Rick Beightol had been an extremely solid and stable addition to the family, that he had been an active participant in rearing both of the children, and the children had each expressed their love for him.

Appellee testified in regard to her business in Dallas which she described as doing extremely well. She was questioned by appellant about her tax returns and the costs of her living accommodations in Dallas. Her 1984 corporate income tax return reflected a net loss, however, and her personal income tax return reflected that she was not required to pay any income tax in 1984. Appellant argues that appellee was untruthful and that this testimony further established that it was not in the best interest of Will for custody to remain with appellee. We are of the opinion that this testimony went to the credibility of the witness and giving due deference to the chancellor's superior position, we cannot conclude his finding is against a clear preponderance of the evidence.

The record reflects that the parties had a discussion with the chancellor regarding the propriety of allowing Will Anderson to testify. Appellant suggested that Will should be interviewed in chambers by the court or interviewed in court without the parents present. Appellee contended that Will should not be permitted to testify and based this contention on Will's emotional instability and put on proof to that effect. She insisted that she be allowed to remain in the courtroom, however, if Will was permitted to testify. The chancellor subsequently determined that Will should be permitted to testify in court, and counsel for appellant noted

that he objected to the parties being present for the testimony, but if one party was, he thought both parties should be present.

Appellant contends on appeal that Will's best interest was not considered in view of the above position taken by appellee. We disagree. Appellee attempted to prevent Will from testifying in view of his emotional instability and appellant insisted that he be permitted to testify. We cannot conclude that this justified a determination on the chancellor's part that it was in Will's best interest that custody be changed to appellant.

Finally, appellant contends that the trial court erred in refusing to allow appellant to supplement and correct the record regarding the closing arguments of counsel. In his brief appellant merely states that the chancellor's denial of his motion constitutes error but has not provided the court with any authority for this proposition or shown how he was prejudiced. Where an assignment of error is unsupported by either convincing argument or citation of legal authority, this court does not consider it on appeal unless it is apparent without further research that it is well taken. *Hill* v. *Farmers Union Mutual Insurance Co.*, 15 Ark. App. 222, 691 S.W.2d 196 (1985). The record reflects that in the order denying appellant's motion, the chancellor stated that a court reporter was available and appellant should have asked that closing arguments be recorded, and that argument of counsel did not rise to the level of admissible evidence. We find no error in the chancellor's denial of appellant's motion, and his decision is affirmed in all respects.

Affirmed.

CLONINGER and COOPER, JJ., agree.