2010 Ark. App. 155

**Juliane Kinard MATHEWS, Appellant**

v.

**Joseph G. SCHUMACHER, Appellee.**

No. CA 09–565.

Court of Appeals of Arkansas.

Feb. 17, 2010.

**32**

Floyd Mattison Thomas, Jr., Thomas Hickey & Shepherd, L.L.P., El Dorado, for Appellant.

Eugene D. Bramblett, Camden, for Appellee.

ROBERT J. GLADWIN, Judge.

Appellant Juliane Kinard Mathews appeals the Union County Circuit Court's January 30, 2009 order granting appellee Joseph Schumacher's petition for permission to move the residency of the parties' minor child and denying appellant's counterclaim for change of custody. Appellant claims on appeal that the trial court erred in granting appellee's petition to relocate,

in denying her counterclaim for change of custody, and in denying her motion for the trial judge's recusal. We find no error and affirm.

*Facts*

The parties were divorced on December 12, 2003, and custody of their minor daughter, born November 1, 2000, was ultimately awarded by order filed January 22, 2007,[1] to appellee, with appellant paying child support in the amount of $900 per month. On June 5, 2007, appellee filed a petition for permission to move the residency of the minor child to Beresford, South Dakota. Appellant objected and filed a motion to reduce child support, a motion to recuse, and a counterclaim for change of custody. In support of her motion to recuse, appellant attached a letter from the executive director of the Judicial Discipline & Disability Commission (Commission) referencing the complaint she had filed against the trial-court judge based upon undue delay. The trial court denied appellant's motion for recusal on May 15, 2008.

The hearing on appellee's petition to remove the child to South Dakota was held on July 30, 31, and August 1, 2008. The trial court noted in his letter opinion that appellee sought to move with his daughter to Beresford, South Dakota, for two reasons: (1) to increase his income and improve his client base as a sales representative for Royal Oil Company and

1. The parties agreed that the Temporary Agreed Order of October 1, 2003, was to remain in effect regarding custody until such time as a final hearing could be held. That order provided that the parties would equally divide physical custody of the child. On March 11, 2005, appellee filed a petition to Modify Custody and appellant filed a counterpetition for the same relief. After a hearing on June 21, 2006, the trial court issued a letter opinion on August 28, 2006, granting custody of the minor child to appellee and

indicated that a detailed decision would be forthcoming. After several months, when no ruling was issued, appellant filed a complaint against the trial-court judge with the Judicial Discipline & Disability Commission for not rendering a prompt ruling. Appellant also filed on January 3, 2007, a petition to recuse and for a new trial because of the delay in the trial court's ruling. A detailed letter opinion was issued on January 12, 2007, and an order was filed on January 22, 2007.

Mannatech, and (2) to help care for his elderly parents, whose health is declining. Appellant asserted that the sole basis for appellee's proposed move was to limit her contact with the minor child. She claimed that ill will on appellee's part against her and her family was the reason for his desire to move. She further claimed that because the demands of appellee's jobs had increased, he was no longer able to devote the time necessary to raise their minor daughter, and it was in the child's best interest to be placed with her.

The trial court granted appellee's petition to relocate to South Dakota based upon the following reasons stated in the letter opinion of January 8, 2009:

Defendant has been very liberal with the visitation that he has allowed plaintiff and her family to exercise with [the child]. He has permitted plaintiff and her family to get more visitation with [the child] than was legally required. Other than a two-week period, that immediately preceded the filing of plaintiff's Counterclaim for Custody, defendant for the most part, has allowed plaintiff visitation with [the child] whenever plaintiff made a request.... These extra grants of visitation by defendant were also extended to plaintiff's family members.... Defendant testified that any time [the child] wanted to talk to her mother, he permitted her to do so....

Plaintiff's contention and beliefs that defendant is bitter towards her, that defendant harbors ill will toward her, and that defendant has been hostile toward her is [sic] not supported by the substantial evidence in this case.... Defendant testified that initially he was hurt and had bad feelings toward plaintiff, because he did not want to lose his family, and have [the child] grow up in a divorced situation. Defendant talked to a counselor and a minister about the circumstances of his separation and divorce, and concluded that he had to forgive and move on for the health of [ the child] and all involved. Defendant testified that he has no ill will for the plaintiff or her husband.

The overwhelming evidence supports the fact that defendant has in fact moved on and has no ill will for the plaintiff or her husband. Plaintiff introduced into evidence two tape recordings, one of which included a conversation between the parties.... During this taped conversation, defendant made no insensitive, derogatory, or inappropriate statements, nor did he even raise his voice or show any hostility toward plaintiff. He calmly advised plaintiff that he needed to end the conversation before he said something that he would later regret. Defendant did not know this, or any of his other, many conversations with the plaintiff were being recorded, but he remained cordial and respectful throughout the conversation....

The trial court also noted in its opinion letter that it must consider the best interest of the child in making its determination on the relocation issue. The trial court found that appellee's parents live in Beresford, South Dakota, which is about thirty miles from Sioux Falls, South Dakota. Appellee's parents testified that they have sixteen grandchildren, nine of which live in or near Sioux Falls, and appellee has over 100 relatives in the Sioux Falls area. Witnesses described the local school in Beresford as "challenging." The evidence was that the local high school offers courses in French, Spanish, German, general and advanced mathematics, trigonometry, and calculus. Further testimony indicated that the school activities include wrestling, baseball, basketball, football, golf, soccer, FFA, FHA, dance, cheerlead-

ing, debate teams, Girl Scouts, and Boy Scouts. Piano lessons are also available in the area.

The trial court considered that, even though appellee's parents are Catholic, they attended the child's baptismal ceremony at the Baptist church in El Dorado, Arkansas, and that there is a Baptist church in Beresford. Witnesses also testified that appellee's parents own a farm, and that the child has visited her grandparents in South Dakota, where she has enjoyed bike riding, visiting the lake, swimming, tubing, and boat riding.

The trial court found in the opinion letter that

[d]efendant's proposed move would not cause a detrimental variance to the educational, health, or leisure opportunities for [the child]. Defendant has considerable family in the Beresford area, which includes several female cousins in [the child's] age range, with whom [the child] already has a close relationship. Defendant's family is close-knit, and they enjoy family outings together, much like plaintiffs family. These parties come from two great families, that are close, and that openly show their love and affection for [the child]. [The child] has a close bond with the families of her mother and her father.

The trial court noted in its opinion letter that Dr. Sabine Falls, a clinical psychologist who saw both parties and the child, testified that she believed it would be detrimental to the child to move away from her mother. The trial court further considered that the child had told Dr. Falls that she did not want to move to South Dakota, leave her mother, make new friends, or change schools. Dr. Falls had also testified that she found appellant to be honest and did not find her to be deceptive or manipulative. Dr. Falls had been told by appellant that the child spent more than fifty percent of the time with her mother, and that sometimes, appellee was hostile toward her. However, the trial court found that appellant's testimony at trial "indicated that the time was almost half the time, instead of over fifty percent of the time. The court has previously found that plaintiff has presented no evidence that defendant has been hostile towards her."

Dr. Falls testified that appellee was defensive and uncooperative. Further, she testified that he did not understand that moving to South Dakota was an emotional step for the child. Appellee testified that Dr. Falls misconstrued several of his answers, and he stated that he did not believe that the move to South Dakota would make the child sad or cause her to suffer, but that she would have to go through an adjustment period.

The trial court found that Dr. Falls appeared to have a bias in favor of appellant and against appellee, and that her opinion and testimony were tainted by her belief that a girl should be with her mother. The trial court noted its concern that Dr. Falls had contacted appellant's psychiatrist and offered to the trial court that it was not a problem for appellant to drink socially while taking her prescribed medicines. Further, Dr. Falls's assessment of appellee's inability to foster a relationship between the child and her mother was contrary to the trial court's finding that appellee had been supportive by allowing, among other things, more visitation than required and permitting the child to speak with her mother whenever she desired.

The trial court concluded in its opinion letter as follows:

The Court hereby finds that defendant's petition to relocate with the parties' minor child to Beresford, South Dakota, should be and hereby is granted.

The Court finds such move to be in the best interests of [the child]. Plaintiff failed to overcome the relocation presumption. Plaintiff and [the child] already talk by telephone almost daily. Defendant has been accommodating in this regard, and the Court believes that he will continue to permit this daily telephone contact. The Order to be entered shall include a provision that provides for daily telephone communication between [the child] and plaintiff. The Court is convinced that defendant owes [the child] and will protect her well being.

In denying appellant's motion to change custody, the trial court stated in its opinion letter that it was unable to determine what amount of time the child spent with appellant over the previous year, but it was clear that appellee had the child in his care more than half of the time. The trial court further found:

The Court does not find that defendant is unable to devote the time necessary to properly raise [the child]. Plaintiff has not met her burden on this point. To the contrary, [the child] is happy, well adjusted, and doing wonderfully at home, school and church. She enjoys the time that she spends with both of her parents and her parents' families. Defendant is a loving and devoted father according to the testimony of many, including the plaintiff, and the Court agrees. Defendant is quite involved in every aspect of [the child's] life. He participates actively in every aspect of her educational, social, and religious development. Defendant has gone beyond the traditional roles of fatherhood, and has done the necessary things to effectively and appropriately parent his eight-year-old daughter. His parenting has positively impacted [the child] and her continued development. It remains

in [the child's] best interest that defendant be her primary custodian.

In the order filed January 30, 2009, formalizing the letter opinion as set forth above, the trial court also reduced appellant's child-support obligation from $900 per month to $619 per month. From this order, appellant filed a timely notice of appeal. This appeal followed.

### Standard of Review

We conduct a *de novo* review of actions that have traditionally been tried in chancery court. *City of Cabot v. Brians,* 93 Ark.App. 77, 216 S.W.3d 627 (2005). However, we will not reverse the circuit court's findings in such actions unless the findings are clearly erroneous. *See id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id.*

### Relocation

Appellant first argues that the trial court erred in granting appellee's petition to relocate the minor child to South Dakota. In *Hollandsworth v. Knyzewski,* 353 Ark. 470, 109 S.W.3d 653 (2003), the Arkansas Supreme Court held that relocation alone is not a material change in circumstance. The court pronounced in *Hollandsworth* a presumption in favor of relocation for custodial parents with primary custody. *Id.* at 485, 109 S.W.3d at 663–64. The court held that the noncustodial parent should have the burden to rebut the relocation presumption. *Id.* Therefore, the custodial parent no longer has the obligation to prove a real advantage to herself or himself and to the children in relocating. *Id.*

The *Hollandsworth* court further held that the polestar in making a relocation determination is the best interest of the child, and the court should take into con-

sideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) the visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. *Id.*

Appellant argues that the trial court's decision was clearly not in the best interest of the minor child. She contends that by granting appellee's request, the trial court allowed this eight-year-old girl to be removed from all she has ever known. Appellant maintains that her daughter had been spending about one-half of the time with her in the year preceding the hearing on this motion. Therefore, when the motion was granted, appellant claims that the child was abruptly removed from the regular contact she had with her mother, her half brother, her stepsiblings, her stepfather, as well as her extended maternal family, including her grandmother, aunts, uncles, and cousins. Appellant emphasizes that the child was taken from her family, school, and church. Because the trial court granted the petition, the child had to be moved to a new community and school in the middle of a school year. Appellant argues that appellee considered his parents' needs before the minor child's. She asserts that the trial court ignored the expert's opinion that appellee disregarded the child's feelings, desires, and mental effect such a big move could have on the child.

Appellant argues that appellee's reasons for moving to South Dakota do not make sense. She asks if appellee must assist his parents due to their poor health, how can his parents manage to help him with the child? She contends that appellee's reasons for moving are not necessarily good reasons for the child to move.

Appellant maintains that the trial court failed to consider two factors set forth in *Hollandsworth:* (1) the child's preference; and (2) how the child's visitation with her mother will be affected by moving so far away. She claims that she presented evidence that appellee denied the child the ability to call her mother while traveling with appellee. Also, the trial court heard tape-recorded telephone calls where the child begged her mother to be sure her father allowed her to visit with her mother when she returned from a week-long visit to South Dakota. She argues that the trial court failed to give this evidence the proper consideration it deserved.

Appellant further contends that even though the child did not testify, the child's preference was in evidence in other ways. Dr. Falls's testimony clearly indicated that the child did not want to move. Further, appellant argues that the sound of the child's voice in the recorded telephone conversations indicates that she did not want to be separated from her mother.

Appellant also claims that the trial court failed to adequately consider the child's best interests in granting the request to relocate. She again asserts that the child had been spending up to fifty-percent of her time with her mother. Now, she will only be able to visit her mother in the summers, half of the Christmas vacation, and spring break in even-numbered years. Because this order was issued in an odd-numbered year, the child would go from seeing her mother half of the time to not seeing her at all from January until school was out. Then, she would not see her again until Christmas. There was no provision for the child to ever be with her

mother on the child's birthday, which is November 1. Appellant contends that this arrangement is not in the best interests of the child.

■ Appellee claims, and we agree, that the trial court did not err in granting his petition to relocate the child to South Dakota. The trial court addressed each *Hollandsworth* factor in determining that the move should be allowed. First, appellee's reasons for the relocation were to increase his income and help care for his elderly parents. The evidence supports the trial court's finding that appellee's proposed move was not based on his desire to limit the child's time with her mother or his feelings of ill will toward her or her family.

The trial court considered evidence that appellee made sure that appellant was notified of all school reports and activities. Further, appellant acknowledged that appellee had been generous in sharing time with the child, and her family acknowledged the same thing. Appellee told the trial court that he sought counseling and concluded that he had to forgive appellant and move on. He testified that he did not have ill feelings toward appellant. He claimed that this is evidenced by the fact that he invited appellant and her husband to the child's baptism. This evidence, coupled with the testimony of his superiors at both Royal Oil and Mannatech that they were behind appellee in his desire to move to South Dakota, and appellee's own testimony regarding his aging parents provided substantial evidence to support the trial court's finding that ill will toward appellant was not behind his desire to move to South Dakota.

Second, the evidence before the trial court was that Beresford schools are challenging and offered varied courses and extracurricular activities. Appellee's two sisters work in the health-care field, and appellee has a very large extended family in South Dakota. The evidence established that the child has cousins there with whom she has established a close relationship. Further, the evidence was that she has enjoyed family outings on the lake, picnics, swimming, tubing, boat riding, and girls' day with her grandmother and female cousins. Therefore, there was substantial evidence to support the trial court's finding that the move to South Dakota would not cause a detrimental variance to the child's educational, health, or leisure opportunities.

Third, the trial court considered the visitation and communication schedule for the noncustodial parent. The trial court awarded appellant specified visitation much like appellant has with her son, who lives in Little Rock, Arkansas. Further, the trial court noted that the child and her mother talk by telephone almost daily, and included a provision for daily telephone communication. Finally, we agree with appellee's contention that, because the minor child and her stepbrother have similar visitation schedules with their mother, they should be able to maintain a meaningful relationship with each other and their mother under the visitation scheme set forth by the trial court.

Fourth, the trial court considered the effect of the move on the extended family relationships in South Dakota and in Arkansas. The trial court made a finding that both parties came from great families that are close and openly show their love and affection for the child, and the child has a close bond with the families. The effect of the trial court's decision falls equally on both extended families. The trial court considered that each family would have to make adjustments in spending time with the child.

■ Fifth, the trial court heard evidence of the child's preference. However,

the child is eight years old and did not testify. The trial court heard from Dr. Falls that the child did not want to move, make new friends, or change schools. The attitudes and wishes of the child, although not controlling, are a proper consideration in making an award of custody. *See Norman v. Norman*, 268 Ark. 842, 596 S.W.2d 361 (Ark.App.1980). Here, the trial court properly considered the child's wishes by noting in its letter opinion that the child told Dr. Falls she did not want to go to South Dakota. Nevertheless, having considered the evidence, the trial court still found that it was in the child's best interest to move to South Dakota with her father.

Thus, the trial court's determination to approve appellee's relocation petition was based upon the evidence as applied to the five factors as set forth in *Hollandsworth.* We hold, accordingly, that the trial court's decision was not clearly erroneous and affirm.

### Recusal

Appellant contends that the trial court erred in denying her motion for recusal, which was based upon her prior complaint against the trial-court judge with the Commission for failure to render a prompt and expedient decision. The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Porter v. Arkansas Dep't of Health & Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *Id.* A judge is presumed to be impartial. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001). The party seeking recusal must demonstrate bias. *Id.*

Appellant asserts that the trial judge has a duty to "avoid impropriety and the appearance of impropriety in all of the judge's activities." Ark.Code Jud. Conduct Canon 2. Further, she claims that a judge must dispose of all judicial matters promptly, efficiently and fairly. Ark.Code Jud. Conduct Canon 3(B)(8). Appellant maintains that the trial judge violated both these duties.

Appellant argues that *Korolko v. Korolko*, 33 Ark.App. 194, 803 S.W.2d 948 (1991), is distinguishable from the instant case. In *Korolko*, this court held that a counsel's letter advising the trial judge that he had filed a judicial complaint against the judge was not sufficient to establish that the judge erred in denying a motion to recuse. Appellant contends that, even though the trial judge here was notified of appellant's complaint against him filed with the Commission, the complaint herein was filed by appellant, not by her lawyer, as was the case in *Korolko*. Also, the trial judge here had official notification of the complaint by way of a letter from the Commission. In *Korolko*, the judge had been notified by a letter from an attorney. Also, here, appellant filed a motion to recuse, which was ruled upon by the trial court. No recusal motion was filed in *Korolko*. Finally, appellant contends that the *Korolko* decision was not hurriedly rendered two weeks after the trial judge was publicly and officially reprimanded for five other similar complaints of failure to promptly decide cases, as was the situation here. Based on these distinctions, appellant argues that the trial judge herein abused his discretion in denying her motion to recuse.

Appellant contends that even though she did not appeal the trial court's decision in awarding custody to appellee, she did file a complaint with the Commission because of the delay between the date of the hearing, the court's ruling, and the court's written opinion in the matter.

However, in a letter dated May 18, 2007, James A. Badami advised that his investigation of the matter did not reveal any evidence of judicial misconduct, wrong-doing, or incapacity and, therefore, her complaint was dismissed. When appellant filed her motion to recuse, the trial judge denied the motion stating that he had no animosity toward appellant, that he understood her actions were not without reason, and that he believed she was justified. The trial judge assured appellant that he would give her a fair and impartial hearing. Therefore, appellant failed to show prejudice or to demonstrate bias in the record. |₁₄Accordingly, we hold that the trial court did not abuse his discretion in denying appellant's motion to recuse.[2]

### Change of Custody

Appellant argues that the trial court erred in denying her counterclaim for change of custody. In *Hamilton v. Barrett*, 337 Ark. 460, 465–66, 989 S.W.2d 520, 523 (1999), our supreme court set forth the appellate court's well-settled standard of review applied in custody cases:

> In reviewing [equity] cases, we consider the evidence *de novo*, but will not reverse a [trial court's] findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). We give due deference to the superior position of the [trial court] to view and judge the credibility of the witnesses. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997). This deference to the [trial court] is even greater in cases involving child custody, as a heavier burden is placed on the [trial court] to utilize to the fullest extent [its] powers of perception in evaluating the witnesses, their

testimony, and the best interest of the children. *Anderson v. Anderson*, 18 Ark.App. 284, 715 S.W.2d 218 (1986). Where the [trial court] fails to make findings of fact about a change in circumstances, this court, under its *de novo* review, may nonetheless conclude that there was sufficient evidence from which the [trial court] could have found a change in circumstances. *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988).

Our law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Digby v. Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the [trial court] or were not known by the [trial court] at the time the original custody order was entered. *Jones*, 326 Ark. 481, 931 S.W.2d 767. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.*

|₁₅Appellant argues that the trial court heard evidence of a number of material changes in circumstances, which occurred after the award of custody to appellee. She contends that appellee's job changed from that of being self employed to that of a salesman for two companies. His jobs require him to travel so much that he has allowed appellant to keep the

**2.** Appellant filed a motion requesting that this court take judicial notice of a press release and letter of reprimand issued by the Commission. We deny that motion.

child nearly half of the time. Next, she argues that the fact that she has stopped drinking is a material change in circumstances. She contends that the trial court did not mention this very important evidence in his decision denying her counterclaim for change of custody, and failure to consider this evidence was error.

She further claims that the trial court's finding that appellee had no ill will toward her and that he had moved on was not supported by the record. She contends that appellee made statements indicating that he did not cause the divorce, that he did not want to be divorced, and that appellant had created the situation. Appellant claims that this, coupled with Dr. Falls's testimony that appellee indicated to her that he was not to blame for the issues the child was facing due to the move, indicate that appellee has not moved on, as the trial court concluded.

█ We disagree with appellant and affirm the trial court's denial of her counterclaim for change of custody. The trial court need not consider appellant's improved condition regarding alcohol as a material change in circumstances. A change of circumstances of the noncustodial parent is not sufficient to justify modifying custody. *Lloyd v. Butts,* 343 Ark. 620, 37 S.W.3d 603 (2001). No material change of circumstances was shown that warranted a change in custody because the evidence was that the child continued to be well adjusted, maintain straight A's, and visit her mother extensively. Giving due deference to the trial court's determination on credibility, the court's decision was not clearly against the preponderance of the evidence.

Affirmed.

BROWN, J., agrees.

HART, J., concurs.

HART, J., concurring.

I agree that this case must be affirmed, but write separately because I wish to draw attention to an aspect of our jurisprudence involving parental relocation that is often overlooked. In *Hollandsworth v. Knyzewski,* 353 Ark. 470, 109 S.W.3d 653 (2003), our supreme court held that relocation alone is not a material change in circumstances and announced that there is a presumption in favor of relocation for custodial parents having primary custody. It made it clear in *Hollandsworth* that the custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating. Rather, the noncustodial parent has the burden to rebut the relocation presumption. The *Hollandsworth* court explained that the polestar in making a relocation determination is the best interests of the child, and that the court should take into consideration the following factors: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

I submit that rather than just considering the five *Hollandsworth* factors in terms of whether the noncustodial parent had rebutted the presumption that the custodial parent should be allowed to move, the courts—trial and appellate—should not end their inquiry there, but rather focus on the third factor and ensure that the child is able to maintain a nurturing relationship with the noncustodial parent.

This means making every effort to allow the child to visit with the noncustodial parent during any extended school holidays. Spring break should not be alternated; it should be the given to the noncustodial parent, as should the Christmas break. Additionally, the courts should strongly consider making the custodial parent bear the costs of transportation for these visits.

While our supreme court has determined that parental relocation will not constitute a change of circumstances in parental custody determinations, it defies common sense to suggest that a move out-of-state will not seriously decrease contact with the non-custodial parent. One need look no further than to the case at bar where the so-called noncustodial parent essentially had custody of the child fifty percent of the time. Absent some extreme circumstance, it is in the best interest of the child to have as close to equal contact with both of the adults that gave him or her life. Perhaps we need a better word than "visitation," because that connotes something like a vacation—as in one might visit Disneyworld. I think a better term would be one-on-one parenting. I hope that the child in this case will not be too adversely affected by the sudden dramatic decrease in her one-on-one parenting from her mother.