

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-28

| | | |
|---|---|---|
| JEFF J. SPALETTA | | **Opinion Delivered** June 4, 2014 |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. DR-2010-697] |
| V. | | |
| RENADA R. WILLIAMS | | HONORABLE BARBARA HALSEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**BILL H. WALMSLEY, Judge**

Appellant Jeff Spaletta appeals from the trial court's order granting appellee Renada Williams's petition to relocate with B.S., the parties' three-year-old son. Spaletta argues that the decision was clearly erroneous because the true reason for relocation was to create separation between him and the child. We affirm.

On April 18, 2013, Williams filed a petition in the Crittenden County Circuit Court requesting permission to relocate to Washington County. She also requested that Spaletta be held in contempt for violating the "no harassment" provision of a previous custody order, that he be ordered to undergo a psychological evaluation, and that his visitation be modified. Spaletta filed a counterpetition for custody or, in the alternative, more visitation. A hearing was held on May 3, 2013.

Prior to moving to Crittenden County, Williams had lived in Washington County

SLIP OPINION

for approximately five years including when B.S. was born in 2010. Williams testified that she wanted to relocate to Fayetteville because of a job opportunity, opportunities for B.S., and to escape Spaletta's harassing behavior. The job opportunity was at a hair salon where she had previously worked. Williams said that the salon owner was leaving and was giving her all of her clients. Williams said that while working at a hair salon in West Memphis, she earned $7.25 per hour, but at the new job, she would make between $3100 and $4100 per month. Williams planned for B.S. to attend daycare while she worked, and she said her mother and brothers who lived in the area would be available to help. She produced lists of doctors, dentists, and daycares for B.S. in Fayetteville. She said that B.S. loved his father, and she would allow Spaletta more time to be with B.S. in the summer.

Williams described several instances of harassment occurring in late 2012 and early 2013. She testified that Spaletta had visited her workplace unannounced, insisted she cut his hair, and sent unwanted flowers, balloons, a birthday cake, birthday gifts, and Christmas gifts. She alleged that in December 2012, he followed her home from work and yelled at her, and the police had to make him leave. Williams believed that Spaletta had sent her personal information to the prosecutor's office and her former landlord in an effort to get her in trouble. On January 9, 2013, Williams obtained a one-year order of protection. In February, Williams called the police after Spaletta followed her to McDonalds and yelled at her.

Audrey Huggins, Williams's mother, testified that she lived in Springdale in a two-bedroom duplex and that Williams and B.S. could live with her as long as needed.

2

Huggins worked full-time, but she said she could help care for B.S., pick him up from daycare, and transport him for visitation.

Spaletta claimed that Williams's motives for moving were frivolous. He argued that she was just trying to get away from him and hurt his relationship with the child. He contended that she could work elsewhere in eastern Arkansas and make more money. Spaletta claimed that when Williams previously worked for the salon in Fayetteville, she did not do well financially. He noted that B.S. would be sharing a room with Williams when living with his grandmother and believed that B.S. would not benefit educationally. Spaletta noted that he took B.S. to weekly classes at the library, to church in Marion, and to visit his grandmother in a nursing home. Spaletta claimed that his visits to Williams's workplace were either with her prior knowledge or because he was in the area with B.S. and she had called them over. He denied following her and said she had filed false charges for harassment.

The trial court entered its order on July 31, 2013, granting Williams's request to relocate. The court noted Williams's job opportunity and family support in Washington County and found that B.S. would have the same opportunities. Regarding the effect on extended family relationships, the court noted that the distance was shorter than in other relocations it had approved. The court concluded that Spaletta had not overcome the legal presumption in favor of relocation. The court ruled that the visitation schedule set out in the October 15, 2012 order of legal custody would remain in full force and effect with certain modifications. The petition for contempt, request to suspend visitation, and request for psychological evaluation were all denied.

3

Spaletta filed a motion for reconsideration on August 12, 2013, and an amended motion on August 28, 2013. The motions were not ruled on. Spaletta filed a timely notice of appeal.

We conduct a de novo review of actions that have traditionally been tried in chancery court. *Mathews v. Schumacher*, 2010 Ark. App. 155, 375 S.W.3d 31. However, we will not reverse the circuit court's findings in such actions unless the findings are clearly erroneous. *Id*. A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id*.

In *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), the Arkansas Supreme Court announced a presumption in favor of relocation for parents with primary custody. The court held that the noncustodial parent should have the burden to rebut the relocation presumption. *Id*. Therefore, the custodial parent no longer has the obligation to prove a real advantage to parent and child when relocating. *Id*.

The *Hollandsworth* court held that the polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) the visitation and communication schedule for the noncustodial parent; (4) the effect of the move on extended family relationships in the current location and new location; and (5) the preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. *Id*.

SLIP OPINION

SLIP OPINION

Spaletta argues that the trial court failed to address Williams's real motive behind moving—to make it far more difficult for him to have continuous, meaningful contact with his son. He argues that relocating denies him the opportunity to visit his son at daycare and provide him with activities during the week. He claims that the relocation will not be beneficial to Williams financially and that B.S.'s living arrangements will be worse. Spaletta also argues that the alleged harassment is not a proper reason for relocation.

Spaletta argues that this case is identical to *Sill v. Sill*, 94 Ark. App. 211, 228 S.W.3d 538 (2006), where the trial court found that the father had rebutted the presumption in favor of relocation after the mother relocated to her hometown and took a job with lower pay. In *Sill*, however, the trial court found that the move was for the sole purpose of thwarting the father's visitation and alienating his children from him. Here, there was no such finding. Although Williams wanted to remove herself from the situation with Spaletta, there was no evidence put forth that she had hampered his visitation or was trying to alienate him from the child. There was evidence that moving to Fayetteville would better Williams's situation financially and allow her to receive support from her mother and brothers. A trial court is to exercise all its powers of perception in viewing the witnesses and their testimony when determining the best interest of the children. *Sill*, *supra*. The trial court was in the best position to observe and assess the parties' motives. We hold that the court's decision was not clearly erroneous.

Spaletta also argues that if relocation is affirmed, the case should be remanded for the trial court to restructure his visitation. The trial court ruled that the prior visitation orders

would remain in effect as modified by the order of protection entered by another Crittenden County court. The order of protection modified the October 2012 custody order by terminating telephone visitation and changing the visitation-exchange location to the Marion Police Department. In the case at bar, the court changed the exchange location in even-numbered months to the Fayetteville Police Department. The court also granted Spaletta visitation for the entire months of June and July.

Spaletta argues that the modified visitation schedule hinders his relationship with B.S. by eliminating all of his weekday visits and half of his weekend visits. He proposes a different schedule with more frequent visitation. The reduced visitation Spaletta refers to, however, was not set out in the court's written order or announced in the court's oral findings incorporated into that order. We cannot address his argument regarding a modified visitation schedule as it does not appear that the court ordered such a schedule.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*J. F. Valley*, for appellant.

*Lela P. Davison*, Legal Aid of Arkansas, Inc., for appellee.